IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
At Charleston

ERIE INSURANCE PROPERTY AND
CASUALTY COMPANY,

          Plaintiff,

v.                                          CIVIL ACTION NO.: 2:19-cv-00272
                                          The Honorable Thomas E. Johnston

TOP DOWN DEVLOPMENT, LLC,
BYARD M. COLEMAN,
TIMOTHY VANDEBORNE,
ROGER WALKER,
JON STEELE, and
ELIZABETH KEELEY STEELE

          Defendants.

## SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

      COMES NOW the Plaintiff, Erie Insurance Property and Casualty Company (hereinafter "Erie"), by and through its attorneys, Michelle E. Gaston, Esquire, Skyler V. Assif, Esquire, and the law firm of Steptoe & Johnson PLLC, and for its Complaint for Declaratory Relief, states as follows:

      1.      This action is instituted pursuant to the provisions of W.Va. Code §§ 55-13-1, *et seq.*, known as the Uniform Declaratory Judgments Act and 28 U.S.C. § 2201 regarding declaratory judgments.

      2.      Erie is a corporation with its principal place of business located in the State of Pennsylvania and is licensed to do business in the State of West Virginia.

      3.      Top Down Development LLC ("Top Down") is a limited liability company organized and existing in the State of West Virginia.

      4.      Byard M. Coleman is an organizer of Top Down and is a citizen and resident of Dunbar, Kanawha County, West Virginia.

      5.      Timothy Vandeborne is a citizen and resident of Charleston, Kanawha County, West Virginia.

      6.      Roger Walker is a citizen and resident of Charleston, Kanawha County, West Virginia.

7. Jon Steele is a citizen and resident of Charleston, Kanawha County, West Virginia.

8. Elizabeth Keeley Steele is a citizen and resident of Charleston, Kanawha County, West Virginia.

9. Upon information and belief, the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00). *See Erie Ins. Prop. and Cas. Co. v. Smith*, 2006 WL 2591127 (S.D.W.Va. 2006) (Amount in controversy is value of underlying claim including pecuniary result to either party).

10. Top Down purchased a policy of commercial general liability insurance, policy number Q30 5600027 ("CGL policies"), from Erie, which policy canceled on or about October 6, 2010. [CGL Policies for policy periods from June 6, 2006-October 6, 2010, attached hereto as Exhibit A].

11. Top Down purchased a policy of commercial umbrella insurance, policy number Q30 5670015 ("BCL policies"), from Erie, which policy canceled on or about October 6, 2010. [BCL Policies for policy periods from June 6, 2006-October 6, 2010, attached hereto as Exhibit B].

12. Timothy Vandeborne brought suit in Kanawha County West Virginia Circuit Court against Top Down and Byard M. Coleman alleging damage to his Kanawha County, West Virginia home first noticed "[i]n early 2016" ("Vandeborne litigation"). [Vandeborne Complaint, attached hereto as Exhibit C].

13. As recently amended, the Vandeborne litigation also alleges "[n]ot until 2016 did Plaintiff have an appreciable understanding or knowledge that the conduct, acts or omissions of Defendants caused this marked increase in the amount of water coming down the hillside onto his property from the subdivision." [Vandeborne Second Amended Complaint, attached hereto as Exhibit D].

14. Roger Walker brought suit in Kanawha County West Virginia Circuit Court against Top Down and Byard M. Coleman alleging damage to his Kanawha County, West Virginia home first noticed "[i]n early 2016" ("Walker litigation"). [Walker Complaint, attached hereto as Exhibit E].

15. As recently amended, the Walker litigation also alleges "[n]ot until 2016 did Plaintiff have an appreciable understanding or knowledge that the conduct, acts or omissions of Defendants caused this marked increase in the amount of water coming down the hillside onto his property from the subdivision." [Walker Second Amended Complaint, attached hereto as Exhibit F].

16. Jon Steele and Elizabeth Keeley Steele brought suit in Kanawha County West Virginia Circuit Court against Top Down and Byard M. Coleman alleging damage to their Kanawha County, West Virginia home first noticed "[i]n early 2016" ("Steele litigation"). [Steele Complaint, attached hereto as Exhibit G].

17. As recently amended, the Steele litigation also alleges "[n]ot until 2016 did Plaintiff have an appreciable understanding or knowledge that the conduct, acts or omissions of Defendants caused this marked increase in the amount of water coming down the hillside onto his property from the subdivision." [Steele Second Amended Complaint, attached hereto as Exhibit H].

18. The suits against Top Down and Byard M. Coleman allege that the subject Lance Drive properties have witnessed damage as a result of excessive storm water run-off developing after the development of "The Pointe" subdivision. [Exhibits C, E, and G at ¶¶ 8-9; Exhibits D, F, and H at ¶ 9].

19. The suits against Top Down and Byard M. Coleman allege that "[i]n early 2016" those bringing the suits witnessed "trees leaning and eventually a large piece of ground slipped several feet." [Exhibits C, E, and G at ¶ 10; Exhibits D, F, and H at ¶ 11].

20. The suits against Top Down and Byard M. Coleman allege that, since early 2016, "numerous trees, rocks and boulders have come down the hillside during and after rainfall events that have damaged . . . .property" including "damage to the foundation and destruction of the home's deck." [Exhibits C, E, and G at ¶¶ 11-12; Exhibits D, F, and H at ¶¶ 12-13].

21. The suits against Top Down and Byard M. Coleman allege that "the entire hillside is in danger of collapsing" and that the Lance Drive homes are "above Greenbrier Street" and there is a fear "that boulders or trees could be carried . . . onto the busy thoroughfare below thereby exposing" the Lance Drive property owners to liability. [Exhibits C, E, and G at ¶¶ 13-14; Exhibits D, F, and H at ¶¶ 14-15].

22. The suits against Top Down and Byard M. Coleman allege that the "design, development, and maintenance of 'The Pointe' subdivision disrupted the hydrologic balance, increasing storm water run-off, which is the proximate cause of the destabilization of the land and landslides on and around the . . . property resulting in damage. . . ." [Exhibits C, E, and G at ¶ 16; Exhibits D and F at ¶ 17; Exhibit H at ¶ 18].

23. The suits against Top Down and Byard M. Coleman allege "loss of recreational opportunities, diminished quality of life, annoyance and inconvenience, loss of use, physical damage to property" and "diminution of the value of the property". [Exhibit C and E at ¶ 18; Exhibit G at ¶ 19; Exhibits D and F at ¶ 19; Exhibit H at ¶ 20].

24. The suits against Top Down and Byard M. Coleman allege a failure "to design and construct the development in such a manner whereby the storm water run-off is controlled in an appropriate manner." [Exhibit C and E at ¶ 19; Exhibit G at ¶ 20; Exhibits D and F ¶ 20; Exhibit H at ¶ 20].

25. The suits against Top Down and Byard M. Coleman allege a failure "to maintain their respective lots properly in the development to the extent that storm water run-off is not controlled in an appropriate manner." [Exhibit C and E at ¶ 20; Exhibit G at ¶ 21; Exhibits D and F at ¶ 21; Exhibit H at ¶ 22].

26. The suits against Top Down and Byard M. Coleman allege "actual malice" "or a conscious, reckless and outrageous indifference to the health, safety and welfare of others." [Exhibit C and E at ¶ 21; Exhibit G at ¶ 22; Exhibits D and F at ¶ 22; Exhibit H at ¶ 23].

27. The suit against Top Down and Byard M. Coleman allege "negligence and gross negligence", "trespass", "nuisance", "property damage" and seek injunctive relief. [Exhibits C, D, E, F, G, and H].

28. Top Down and Byard M. Coleman have sought the defense of, and indemnification for, the Vandeborne Litigation, the Walker Litigation, and the Steele Litigation under the Erie insurance policies.[1]

29. The CGL policy issued by Erie to Top Down, a Limited Liability Corporation, states that Top Down is an insured and "Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers." [Exhibit A at CG 00 01 (Ed. 12/07) at 7].

30. The CGL policy issued by Erie to Top Down, a Limited Liability Corporation, states that, subject to exceptions stated within the policy, "your 'employees'" other than "your managers" are insureds "but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business". [Exhibit A at CG 00 01 (Ed. 12/07) at 7].

31. "Employee' is defined as including "a 'leased worker'" but not including "a 'temporary worker'". [Exhibit A at CG 00 01 (Ed. 12/07) at 10].

32. To the extent that Byard M. Coleman does not satisfy the policy language of who is an insured, there would be no coverage for the defense of, and indemnity for the Vandeborne Litigation, the Walker Litigation, and the Steele Litigation for Byard M. Coleman under the Erie CGL policies.

33. The BCL policy issued by Erie to Top Down, a Limited Liability Corporation, states that Top Down is an insured and "Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers." [Exhibit B at CU 00 01 (Ed. 12/07) at 8].

34. The BCL policy issued by Erie to Top Down, a Limited Liability Corporation, states that, subject to exceptions stated within the policy, "your 'employees'" other than "your managers" are insureds "but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business". [Exhibit B at CU 00 01 (Ed. 12/07) at 8].

---

[1] Coverage for said claims was examined and denied under bonds, Q90-7870198 and Q91, 5570109. Said denial has not been contested.

4

35. "Employee' is defined as including "a 'leased worker'" but not including "a 'temporary worker'". [Exhibit B at CU 00 01 (Ed. 12/07) at 13].

36. To the extent that Byard M. Coleman does not satisfy the policy language of who is an insured, there would be no coverage for the defense of, and indemnity for the Vandeborne Litigation, the Walker Litigation, and the Steele Litigation for Byard M. Coleman under the Erie BCL policies.

37. As amended, the "Bodily Injury And Property Damage Liability" insuring clause for the CGL policies states as follows:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages, including punitive or exemplary damages to the extent allowed by law, because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. We may, at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that may result: But:
>
> 1) The amount we will pay for damages is limited as described in Section **III** – Limits of Insurance; and
>
> 2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.
>
> b. This insurance applies to 'bodily injury' or 'property damage' only if:
>
> 1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and
>
> 2) The 'bodily injury' or 'property damage' occurs during the policy period.
>
> c) Damages because of 'bodily injury' include damages claimed by any person or organization for care, loss of services or death resulting at any time from the 'bodily injury'.

[Exhibit A at UL-OW (Ed. 3/01)].

38. Coverage of the CGL policies is triggered by an "occurrence" which is defined by the CGL policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [Exhibit A CG 00 01 (Ed. 12/07) at 12].

39. There is no "Bodily Injury And Property Damage Liability" coverage under the Erie CGL policies for any claims in the Vandeborne Litigation, the Walker Litigation, and the Steele Litigation which do not allege an "occurrence" as defined by the Erie policies.

40. As amended, the "Bodily Injury And Property Damage Liability" insuring clause for the BCL policies states, in pertinent part, as follows:

> a. We will pay on behalf of the insured the 'ultimate net loss' including punitive or exemplary damages to the extent allowed by law, in excess of the 'retained limit', because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages when the 'underlying insurance' does not provide coverage or the limits of 'underlying insurance' have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other 'suit' seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply. At our discretion, we may investigate any 'occurrence' and settle any resultant claim or 'suit' for which we have the duty to defend. But:
>
> 1) The amount we will pay for the 'ultimate net loss' is limited as described in Section **III** – Limits of Insurance; and
>
> 2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B**
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**
>
> b. This insurance applies to 'bodily injury' and 'property damage' only if:
>
> 1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory'; and
>
> 2) The 'bodily injury' or 'property damage' occurs during the policy period; and

  c)  Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no 'employee' authorized by you to give or receive notice of any 'occurrence' or claim, new that the 'bodily injury' or 'property damage' had occurred, in whole or in part. If such a listed insured or authorized 'employee' knew, prior to the policy period, that the 'bodily injury' or 'property damage' occurred, than any continuation, change or resumption of such 'bodily injury' or 'property damage' during or after the policy period will be deemed to have been known prior to the policy period.

[Exhibit B at CAT-155 (Ed. 4/03) at 1].

  41.  Coverage under the BCL policies is triggered by an "occurrence" which is defined by the BCL policies as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." [Exhibit B at CU 00 01 (Ed. 12/07) at 14].

  42.  There is no "Bodily Injury And Property Damage Liability" coverage under the Erie BCL policies for any claims in the Vandeborne Litigation, the Walker Litigation, and the Steele Litigation which do not allege an "occurrence" as defined by the Erie policies.

  43.  The CGL policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." [Exhibit A at CG 00 01 (Ed. 12/07) at 10].

  44.  Claims in the Vandeborne Litigation, the Walker Litigation, and the Steele Litigation which do not allege physical, corporeal harm and/or physical manifestation of emotional distress do not allege a "Bodily Injury" as defined by the Erie CGL policies.

  45.  The BCL policies define "bodily injury" as "bodily injury, disability, sickness, or disease sustained by a person, including death resulting from any of these at any time. 'Bodily injury' includes mental anguish or other mental injury resulting from 'bodily injury'." [Exhibit B at CU 00 01 (Ed. 12/07) at 12].

  46.  Claims in the Vandeborne Litigation, the Walker Litigation, and the Steele Litigation which do not allege physical, corporeal harm and/or physical manifestation of emotional distress do not allege a "Bodily Injury" as defined by the Erie BCL policies.

  47.  "Property damage" is defined by the CGL policies as:

  a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed occur at the time of the physical injury that caused it; or

  b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

> For the purposes of this insurance, electronic data is not tangible property.
>
> As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

[Exhibit A at CG 00 01 (Ed. 12/07) at 12].

48. Purely economic damages do not allege "Property Damage" as defined by the Erie CGL policies.

49. "Property damage" is defined by the BCL policies as:

> a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed occur at the time of the physical injury that caused it; or
>
> b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.
>
> With respect to the ownership, maintenance or use of 'covered autos', property damage also includes 'pollution cost or expense', but only to the extent that coverage exists for the 'underlying insurance' or would have existed but for the exhaustion of the underlying limits.
>
> For the purposes of this insurance, with respect to other than the ownership, maintenance or use of 'covered autos', electronic data is not tangible property.
>
> As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software (including systems and applications software), hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

[Exhibit B at CU 00 01 (Ed. 12/07) at 15].

50. Purely economic damages do not allege "Property Damage" as defined by the Erie BCL policies.

8

51. For coverage to exist, the CGL policies require that "The 'bodily injury' or 'property damage' occur[] during the policy period." [Exhibit A at UL-OW (Ed. 3/01) at 1].

52. For coverage to exist, the BCL policies require that "The 'bodily injury' or 'property damage' occur[] during the policy period." [Exhibit B at CAT-155 (Ed. 4/03) at 1].

53. There is no liability coverage under the Erie CGL or BCL policies as the damage alleged in the Vandeborne Litigation, the Walker Litigation, and the Steele Litigation occurred outside of all Erie policy periods.

54. The CGL policies exclude from coverage " 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured. This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property." [Exhibit A at CG 00 01 (Ed. 12/07) at 1].

55. There is no "Bodily Injury And Property Damage Liability" coverage under the Erie CGL policies for any damage in the Vandeborne Litigation, the Walker Litigation, and the Steele Litigation which was expected or intended.

56. The BCL policies exclude from coverage " 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured. This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property." [Exhibit B at CU 00 01 (Ed. 12/07) at 2].

57. There is no "Bodily Injury And Property Damage Liability" coverage under the Erie BCL policies for any damage in the Vandeborne Litigation, the Walker Litigation, and the Steele Litigation which was expected or intended.

58. The CGL policies exclude "Bodily Injury And Property Damage Liability" coverage due to "[t]he rendering of or failure to render any 'professional services' by you or on your behalf, but only with respect to either or both of the following operations: a. Providing engineering, architectural or surveying services to others in your capacity as an engineer, architect or surveyor; and b. Providing or hiring independent professionals to provide engineering, architectural or surveying services in connection with construction work you perform." [Exhibit A at UL-QN (Ed. 4/06and Ed. 3/01)].

59. The CGL policies define "professional services" as:

> 1. The preparing, approving, or failing to prepare or approve maps, plans, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and
>
> 2. Supervision or inspection activities performed as part of any related architectural or engineering activities.
>
> 'Professional services' do not include services within construction means, methods techniques, sequences and procedures employed by

9

>you in connection with your operations in your capacity as a construction contractor.

[Exhibit A at UL-QN (Ed. 4/06and Ed. 3/01)].

60. There is no "Bodily Injury And Property Damage Liability" coverage under the Erie CGL policies for any damage in the Vandeborne Litigation, the Walker Litigation, and the Steele Litigation excluded from coverage by the "Professional Liability" exclusion.

61. The BCL policies exclude "Bodily Injury And Property Damage Liability" coverage due to "[t]he rendering of or failure to render any professional service. This includes but is not limited to:

>1) Legal, accounting or advertising services;
>
>2) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on a which you serve as construction manager;
>
>3) Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager;
>
>4) Engineering services, including related supervisory or inspection services;
>
>5) Medical, surgical, dental, x-ray or nursing services treatment, advice or instruction;
>
>6) Any health or therapeutic service treatment, advice or instruction;
>
>7) Any service, treatment, advice or instruction for the purpose of appearance or skin enhancement, hair removal or replacement, or personal grooming or therapy;
>
>8) Any service, treatment, advice or instruction relating to physical fitness, including service, treatment, advice or instruction in connection with diet, cardio-vascular fitness, body building or physical training programs;
>
>9) Optometry or optical or hearing aid services including the prescribing, preparation, fitting, demonstration or distribution of ophthalmic lenses and similar products or hearing aid devices;
>
>10) Body piercing services; and

> 11) Services in the practice of pharmacy; but this exclusion does not apply if you are a retail druggist or your operations are those of a retail drugstore;
>
> 12) Law enforcement or firefighting services; and
>
> 13) Handling, embalming, disposal, burial, cremation or disinterment of dead bodies.

[Exhibit B at CU 00 01 (Ed. 12/07) at 4-5].

62. There is no "Bodily Injury And Property Damage Liability" coverage under the Erie BCL policies for any damage in the Vandeborne Litigation, the Walker Litigation, and the Steele Litigation excluded from coverage by the "Professional Services" exclusion.

63. The BCL policies exclude "Bodily Injury And Property Damage Liability" coverage to damage "specifically excluded by an endorsement attached to the 'underlying insurance' or . . . Specially limited by an endorsement attached to the 'underlying insurance'". [Exhibit B at CAT-165 (Ed. 4/03 and 12/09), in pertinent part].

64. There is no "Bodily Injury And Property Damage Liability" coverage under the Erie BCL policies for any damage in the Vandeborne Litigation, the Walker Litigation, and the Steele Litigation excluded from coverage by the "Excluding Coverage Endorsement" also known as the "Underling Insurance Exclusion/Limitation Endorsement".

## COUNT I -- DECLARATORY RELIEF

65. Erie reincorporates by reference the statements and allegations contained in paragraphs 1 through 64 of its request for Declaratory Relief.

66. Erie seeks a declaratory judgment against the other parties to the effect that Erie is not required to provide coverage under the subject policies for the alleged claims and damages of the Vandeborne Litigation, the Walker Litigation and the Steele Litigation, and, further, to the effect that Erie does not have the duty to defend or indemnify its insured(s) of and from said Litigation.

## COUNT II -- ATTORNEY FEES and COSTS

67. Erie reasserts the statements and allegations contained in paragraphs 1 through 66 of its request for Declaratory Relief.

68. W. Va. Code § 55-13-10 provides, "in any proceeding under this article, the Court may make such award of costs as may seem equitable and just."

69. The United States Code permits a discretionary award of "[f]urther necessary or proper relief" following a favorable decision in a declaratory judgment action. 28 U.S.C. § 2202.

70.  Erie submits that a discretionary award of attorney fees and costs in prosecuting this declaratory judgment action is appropriate.

WHEREFORE Erie respectfully requests the following relief:

(1)  A declaration as to the nonexistence of coverage for the defense and indemnification for the claims and damages as set forth in the Vandeborne Litigation, the Walker Litigation, and the Steele Litigation

(2)  That Erie be awarded its attorney's fees and costs in prosecuting this action; and

(3)  That Erie be awarded any and all other further relief that this Court deems just and proper.

**ERIE INSURANCE PROPERTY AND CASUALTY COMPANY,**

**By Counsel**

/s/ Michelle E. Gaston
Michelle E. Gaston, Esq. (WVSB #7494)
STEPTOE & JOHNSON PLLC
825 Third Avenue, Suite 400
P.O. Box 2195
Huntington, WV  25722-2195
michelle.gaston@steptoe-johnson.com

/s/ Skyler V. Assif
Skyler V. Assif, Esq. (WVSB #13532)
P.O. Box 1588
707 Virginia Street, East, 17th Floor
Charleston, WV  25326-1588
Telephone:  304-353-8000
Telecopier:  304-353-8180
Skyler.assif@steptoe-johnson.com

**STEPTOE & JOHNSON PLLC**
**Of Counsel**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
At Charleston

ERIE INSURANCE PROPERTY AND
CASUALTY COMPANY,
       Plaintiff,

v.              CIVIL ACTION NO.: 2:19-cv-00272
               The Honorable Thomas E. Johnston

TOP DOWN DEVLOPMENT, LLC,
BYARD M. COLEMAN,
TIMOTHY VANDEBORNE,
ROGER WALKER, JON STEELE
and ELIZABETH KEELEY STEELE,
       Defendants.

## CERTIFICATE OF SERVICE

  I hereby certify that on the 13th day of December 2019, I electronically filed the foregoing *"Second Amended Complaint for Declaratory Relief"* with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the CM/ECF participants listed below:

| | |
|---|---|
| David R. Barney, Jr., Esq. (WVSB #7958)<br>Thompson Barney<br>2030 Kanawha Boulevard, East<br>Charleston, West Virginia 25311 | John Andrew "Jack" Smith, Esq. (WVSB #3470)<br>Flaherty Sensabaugh Bonasso PLLC<br>200 Capitol Street<br>P.O. Box 3843<br>Charleston, WV 25338 |

               ERIE INSURANCE PROPERTY
               AND CASUALTY COMPANY,
               By Counsel

               /s/ Michelle E. Gaston
               Michelle E. Gaston, Esq. (WVSB #7494)
               STEPTOE & JOHNSON PLLC
               825 Third Avenue, Suite 400
               P.O. Box 2195
               Huntington, WV 25722-2195
               michelle.gaston@steptoe-johnson.com

               /s/ Skyler V. Assif
               Skyler V. Assif, Esq. (WVSB #13532)
               P.O. Box 1588
**STEPTOE & JOHNSON PLLC**    707 Virginia Street, East, 17th Floor
**Of Counsel**          Charleston, WV 25326-1588
               Telephone: 304-353-8000
               Telecopier: 304-353-8180
               Skyler.assif@steptoe-johnson.com